## CIRCUIT COURT OF FAIRFAX COUNTY

Small

v.

Small

December 21, 2001

Case No. (Chancery) 132802

BY JUDGE ARTHUR B. VIEREGG

On Wednesday, December 5, the parties appeared and tried Mrs. Small's rule for Mr. Small to show cause why he should not be held in contempt of court for his failure to make monthly spousal support payments pursuant to a 1994 *pendente lite* decree entered in the parties' pending 1993 divorce suit, *Small v. Small*, Chancery No. 132802 ("Suit One").[1] At trial, Mr. Small conceded he failed to make the monthly payments ordered. However, at the December 5 hearing, despite his admitted failure to make spousal support payments in accordance with the 1994 *pendente lite* decree, he advanced two defenses to the rule.

First, Mr. Small relies upon the defense of *res judicata*. In December 1995, Mr. Small initiated a second divorce suit, *Small v. Small*, Chancery No. 142217 ("Suit Two"). It was concluded by entry of a final decree of divorce

---

[1] This Court had originally conducted a hearing on January 16, 2001, after which Mrs. Small's rule to show cause was dismissed. After considering briefs with regard to Mrs. Small's motion for reconsideration, a plenary hearing on the rule was conducted on December 5, 2001. The initial ruling was, by necessary implication, set aside.

on July 12, 1996. He maintains that this final divorce decree bars Mrs. Small from enforcing the 1994 *pendente lite* decree in Suit One.

Second, Mr. Small contends he is not in violation of the *pendente lite* decree because, pursuant to an agreement with Mrs. Small, he paid her non-conforming spousal support. I will address his arguments in turn.

### I. *Mr. Small's Res Judicata Defense*

In the course of the December 5 hearing, judicial notice was taken of the pleadings and other documents filed in Suits One and Two.

The file in Suit One discloses that on December 28, 1993, Mr. Small filed a bill of complaint seeking a divorce on the grounds of constructive desertion. Mrs. Small filed a timely answer. On April 22, 1994, the late Judge Thomas S. Kenny entered a *pendente lite* decree awarding Mrs. Small spousal support in the amount of $950 per month. Judge Kenny ordered the first payment due on April 1, 1994, and the subsequent payments to be made on the first day of each month thereafter. Judge Kenny further ordered Mr. Small to furnish health care coverage for Mrs. Small and the parties' son.

By order of May 19, 1994, *pendente lite* custody was awarded to Mr. Small. Thereafter, the parties took no further steps to prosecute the case. By order of October 20, 1999, pursuant to Va. Code § 8.01-335, the cause was stricken from this Court's docket. A year later, upon Mrs. Small's motion, the cause was reinstated. On October 20, 2000, Mrs. Small filed, and this Court entered, a rule ordering Mr. Small to show cause why he should not be held in contempt for his failure to pay any of the spousal support ordered by Judge Kenny in the April 22, 1994, *pendente lite* decree.

On December 1, 1995, Mr. Small initiated Suit Two by filing a bill of complaint seeking a divorce on the grounds of one year's separation. A return of service by a special process server, Dogan Gunessever, was filed with the Clerk on March 1, 1996. The return reflects that Mrs. Small had been personally served at 2000 Chain Bridge Road, Vienna, Virginia 22182, on January 19, 1996. Mrs. Small never made an appearance in the Second Suit.

On March 20, 1996, Judge Kenny entered a decree appointing Steven Stone, Esq., as Commissioner in Chancery in Suit Two. On April 9, 1996, Mr. Small's attorney, Kenneth A. Lehman, Esq., mailed a notice to Mrs. Small at 6640 Osborn Street, Falls Church, Virginia 22046, ostensibly notifying her that a commissioner's hearing would be held on April 18, 1996. He also caused a copy of the notice to be served on Mrs. Small at the Osborn Street address on either April 15 or April 18, 1996. The Sheriff's return in the file

reflects that this notice was posted, based on the fact that no member of Mrs. Small's family was present to accept service. A commissioner's hearing was held on April 18, 2001. Thereafter, Commissioner Stone filed his report recommending a divorce based on twelve month's separation. In his report, Commissioner Stone stated that, although Mrs. Small did not attend, notice of the Commissioner's hearing had been served on her by posting on April 15, 1996.

On June 25, Mr. Lehman filed a notice that at 9 a.m. on July 12, 1996, he would present a final decree of divorce for entry by this Court. His notice certified that a copy of the notice and a copy of the proposed final decree of divorce had been *mailed* to Mrs. Small at the Osborn Street, Falls Church, address. On June 25, 1996, the Honorable Jane Marum Roush entered a final decree awarding Mr. Small a divorce on the grounds of one year's separation. The final decree of divorce recited that the bill of complaint had been served on the defendant on January 19, 1996; and that notice of the commissioner's hearing had been served on Mrs. Small by posting on April 15, 1996. The final decree of divorce was silent with respect to the nature of the notice afforded Mrs. Small of the hearing to enter the final divorce decree.

At the December 5, 2001, hearing, Mrs. Small testified that she had not been served with a copy of the bill of complaint in the Second Suit; that 6640 Osborn Street, Falls Church, Virginia, had never been her residence; and that she had never been served with process or received notice of the proceedings in the Second Suit.[2] This evidence was not contradicted by Mr. Small or other evidence, apart from the return of service for the personal service of the original bill of complaint on her at the Chain Bridge Road, Vienna, Virginia, address. Mr. Lehman testified that he recalled often discussing the progress of the case with Mrs. Small. He did not testify that he had ever furnished copies of any pleadings or notices to her.

The defense of *res judicata* precludes the re-litigation of matters decided (or which might have been decided) in a prior cause or action. *Bates v. Devers*, 214 Va. 667 (1974). The foundation of the defense is a prior *valid* order. *Id.* 214 Va. 667 Here, Mrs. Small contends that the final decree of July 12, 1996, entered by Judge Roush, was void because she had not been served with the initial bill of complaint and had never made an appearance and, therefore, that this Court lacked *in personam* jurisdiction over her. In this regard, she contends that although a return of service was filed prior to the

---

[2] Mrs. Small did testify that she had stayed overnight at the Falls Church address on not more than four or five occasions and that these occasions would have occurred in 1994 or 1995.

entry of the July 12, 1996, decree, it may not be considered as proof of service because the return of service was not filed within 72 hours as required by Va. Code § 8.01-325. Mrs. Small further contends that the final decree of divorce was invalid, because she had not been served with notice of each critical stage of the proceedings as required by Va. Code § 20-99. She contends the final decree of divorce was *void*, because it was entered in violation of fundamental principles of due process.

A. *The Return of the Proof of Service: Va. Code § 8.01-325*

The Court file of the Second Suit makes plain that the special process server did not file his return of service as required by Va. Code § 8.01-325, which provides in pertinent part as follows:

> Unless otherwise directed by the court, the person serving process shall make return thereof to the clerk's office within seventy-two hours of service. . . .

Although service was ostensibly made on Mrs. Small on January 19, 1996, the return of service was not filed with the Court until March 1, 1996, approximately 32 *days* later. The issue thus becomes whether a return of service non-compliant with Va. Code § 8.01-325 is proof of valid service. Neither party furnished authority on point. However, Part Two of the Rules of the Supreme Court of Virginia affords some illumination as to this question. Rule 2:5, referring to the returns of services in causes in equity, including divorce suits, provides as follows:

> It shall be the duty of all persons eligible to serve process to make service within five days after receipt, and make return as to those served within seventy-two hours after the earliest service upon any party shown on each Proof of Service; *but failure to make timely service and return shall not prejudice the rights of any party except as provided in Rule 2:4.*

(Emphasis added.)

These Rules promulgated by the Supreme Court of Virginia necessarily imply that a return of service filed outside the seventy-two hour time limit, set forth in both Va. Code § 8.01-325 and Rule 2:4, will not invalidate either the service or a decree entered based on the *in personam* jurisdiction based on that

service. Such a return constitutes *prima facie* evidence that Mrs. Small was served in accordance with the return. Va. Code § 8.01-326.

Mrs. Small, nonetheless, testified that she was not served with process as stated in the return of service. However, her testimony in that regard was not otherwise bolstered by evidence of her whereabouts at the time and place of service, such as a location other than her place of abode. I find that her testimony in that regard was insufficient to overcome the prima facie evidence represented by the return of service. Accordingly, I find that this Court did have *in personam jurisdiction* over Mrs. Small in the Second Suit. Accordingly, her argument advanced to defeat Mr. Small's *res judicata* defense fails.

## B. *The Failure of Service of Notices Pursuant to Va. Code § 20-99*

Mrs. Small also contends that even if she was initially served with the bill of complainant commencing the Second Suit, she was not properly served with notice of the proceedings in that suit as required by Va. Code § 20-99.3. It is plain that Mrs. Small made no appearance in the Second Suit. Va. Code § 20-99.3 provides in pertinent part that when a defendant in a divorce suit does not make an appearance, notice of each stage of the proceedings must be served in accordance with Va. Code § 8.01-296, essentially service in person, by delivery to a relative, or by posting. By necessary implication, therefore, service by mailing is insufficient to satisfy the Va. Code § 20-99 service of notice requirements.

It is apparent that by enacting Va. Code § 20-99.3, the General Assembly recognized the critical importance of service of process and notice in divorce cases as distinguished from other types of litigation. The General Assembly, therefore, prescribed specific, stricter service-of-notice requirements to ensure that parties would be informed of proceedings and in order that receipt of that notice might be verified. This well-recognized aspect of Virginia jurisprudence is embodied in not only the Code of Virginia but also the Rules of Court of the Supreme Court of Virginia. By enacting Va. Code § 20-99.3, the General Assembly expressly required that parties not appearing in a divorce suit be served with notice of each material hearing in such proceedings by personal service, service on a family member, or by posting.

Mrs. Small argues that since she had made no appearance, Mr. Small was therefore required to serve notice upon her with respect to both the commissioner's hearing held by Commissioner Stone and the presentation of the final decree of divorce before Judge Roush on July 12, 1996. The first of these contentions is dispatched by the final decree of divorce. In the final decree, Judge Roush stated that notice of the commissioner's hearing had been

served by posting. Judge Roush's finding to this effect is presumptively correct. However, Judge Roush's decree is silent as to notice of the presentation of the final decree of divorce for entry. The record does not demonstrate that Mrs. Small was ever served with notice of the presentation of the entry of the final decree of divorce in accordance with Va. Code § 20-99.3. At most, the record reflects that Mr. Small's attorney attempted to mail notice to Mrs. Small at the Osborn Street, Falls Church, an address where Mrs. Small testified without contradiction that she did not reside.

Mr. Small, however, contends that his failure to serve Mrs. Small with notice of the entry of the final decree of divorce in accordance with Va. Code § 20-99.3, even if improper, is not a defect that can be raised by collateral attack. He argues that while the final decree of divorce might have been invalidated if appealed, it may not be collaterally attacked in this proceeding. Neither of the parties nor I have found a decision in which this "void or voidable" issue has been expressly addressed by a Virginia appellate court with reference to the failure to serve a § 20-99.3 notice. In *Soliman v. Soliman*, 12 Va. App. 234 (1991), the Court of Appeals did invalidate a final decree entered after only mailed notice had been afforded the opposing party. However, in *Soliman*, unlike this case, the attack on the validity of the final divorce decree was contested by direct appeal, not by collateral attack.

Mr. Small principally relies on *Whiting v. Whiting*, 262 Va. 3 (2001). In that decision, the Virginia Supreme Court addressed the issue of the validity of a decree entered without endorsements, as required by Rule 1:13 of the Rules of Court. The case involved a party who had "received no notice of the final decree and never endorsed it." *Id.*, 262 Va. 3. The Court first stressed that a voidable decree must be challenged by appeal or by bill of review pursuant to Va. Code § 8.01-428, and that it could not be challenged collaterally. The Court then recognized in accordance with prior Virginia case law, that a decree entered in the absence of Rule 1:13 notice was voidable not void. Finally, the Court held that since the final order under consideration had not been appealed or otherwise directly attacked, the decision of the Court of Appeals (holding that the entry of the final divorce decree was void *ab initio*) constituted error and was to be reversed. However, although *Whiting* holds that divorce decrees entered in violation of Rule 1:13 are voidable not void, it is not dispositive of whether or not final decrees of divorce entered in contravention of § 20-99.3 notice are void or voidable.

Mr. Small implicitly argues that a divorce decree entered in violation of § 20-99.3 is not materially different than a divorce decree entered in violation of Rule 1:13. I conclude these notice provisions are materially different and

that *Whiting* is not dispositive of the question before me. Section 20-99.3 notice plainly is required only in a divorce suit and only where a litigant has not made an appearance. By contrast, Rule 1:13 applies to all chancery causes and actions at law and necessarily applies only to the presentation of orders where a litigant has made an appearance. A non-appearing party generally will not be aware of what is transpiring in the course of a divorce case. In that limited circumstance, and specifically in view of the familial subject matter of divorce suits, the General Assembly determined that special notice requirements must be followed to ensure that a party receives actual notice of all material events in divorce suits and that receipt of such notice be more verifiable than mere certificates stating that service of such material events was mailed.

In contrast, Rule 1:13 notice relates to notice of an order entered in all cases and will necessarily apply only to cases in which both parties have made an appearance and therefore presumably have had notice of the progress of the litigation involved in such cases, apart from domestic relations cases enumerated in § 20-99.3. See Rules 2:17, 3:17. Because of these differences, I conclude that *Whiting* does not require that a divorce decree entered without notice to a non-appearing party be attacked directly if at all. Moreover, I further conclude that when the legislature has mandated a specific form of service of notice in a particular kind of case, as it has by enacting Va. Code § 20-99.3 with respect to non-appearing parties in divorce cases, the failure to afford such notice amounts to a *prima facie* due process violation.

The language of the Virginia Court of Appeals in *Soliman* might suggest (but does not hold) that a failure to comply with § 20-99.3 notice requirements will not invalidate a final order of divorce if the party not appearing had received *actual* notice of entry of the final decree of divorce. The pertinent language of *Soliman* follows:

> Because the wife was not given notice of the commissioner's hearing in accordance with the requirements of Code § 20-99, *and there is no evidence in the record that she actually received notice of the hearing,* the final decree of divorce is vacated and the case remanded to the trial court for further proceedings, for which the wife is to receive notice in accordance with Code § 20-99(4).

*Soliman* at 241 (emphasis added). This language implies the following logic: that the purpose of due process is to ensure that a person is afforded a reasonable opportunity to appear at a hearing and to protect his or her

interests. Therefore, receipt of actual notice reasonably in advance of a hearing necessarily will constitute notice consonant with due process. *See generally, Mullane v. Central Hanover Bank & Trust Co., Trustee*, 339 U.S. 306, 314-15 (1950); *Eddine v. Eddine*, 12 Va. App. 760, 763, 460 S.E.2d 914 (1991).

Due process merely requires that a party be afforded notice "reasonable under all the circumstances and [that] affords the party affected a reasonable opportunity to be heard." 12 Va. App. at 763, *quoting Williamson v. Hopewell Redevelopment Auth.*, 203 Va. 653, 655 (1962), *appeal dismissed*, 371 U.S. 234, 9 L. Ed. 2d 495, 83 S. Ct. 315 (1961). It follows, therefore, that since the essence of due process is an opportunity to be heard, actual notice of a proceeding furnished in reasonable time for a party to protect her interests would arguably satisfy due process concerns even though specific statutory notice service requirements, such as those codified in § 20-99.3, were not met.

This possible implication of *Soliman*, however, is irrelevant. Mr. Small's evidence at the December 5 hearing failed to establish that Mrs. Small had received actual knowledge of the entry of the final decree of divorce in the Second Suit. Mr. Small did not testify that he afforded Mrs. Small actual notice of the hearing; and his counsel, Mr. Lehman, testified only generally that in various conversations during the progress of the Second Suit, he had apprised Mrs. Small of the progress of the proceedings. His testimony with regard to such communications with Mrs. Small was remarkably vague. For example, he did not testify when such conversations occurred, nor did he provide specific information with regard to the putative conversations, nor did he maintain any record of the specifics related to such conversations. Mrs. Small affirmatively testified she did not receive such notice. Further, it is unlikely that the address to which Mr. Small's attorney mailed such notice would reasonably have reached Mrs. Small, since, as discussed above, she testified without contradiction that the Osborn Street, Falls Church, address was not her residence. Accordingly, Mr. Small failed to sustain his burden of proving that actual notice of the presentation of the final decree was delivered or communicated to Mrs. Small.

For all of the foregoing reasons, I conclude that the July 12, 1996, divorce decree in the Second Suit was void and does not constitute the foundation for Mr. Small's *res judicata* defense.

As indicated at the December 5 hearing, the statements by Judge Roush that Mrs. Small had initially been served with process and that she later had received posted notice of the Commissioner's hearing on April 18, 1996, are presumptively correct. An issue arises as to whether or not those statements are conclusively correct. In the absence of authority on this point, I conclude that such statements are subject to being rebutted by evidence. At trial, Mrs. Small also testified, without contradiction, that she had only stayed at the Falls Church address where

notice of the Commissioner's hearing was posted on, at most, four or five occasions. This was sufficient to demonstrate that notice of the Commissioner's hearing was also not properly served; that Va. Code § 20-99.3 had not been complied with; and that it is another basis on which I conclude the July 12, 1996, decree was void not voidable, consistent with the rationale applied with regard to mailed notice of the entry of the final decree of divorce. Of course, in view of my determination that Mrs. Small never resided at the Falls Church address, and given the fact that she had neither made an appearance nor informed the clerk that she lived at the Falls Church address, even service mailed pursuant to Va. Code § 20-99.4 was invalid and could not support the validity of the July 12, 1996, decree.

## II. *Non-Conforming Support Payments*

At the December 5 hearing, Mr. Small contended that even if the *pendente lite* decree in the First Suit created a binding obligation for him to pay spousal support, he should be credited with non-conforming payments that he made to or on behalf of Mrs. Small.

The Virginia appellate courts have consistently held that the right to spousal support becomes vested and enforceable when ordered to be made and that arrearages may not retroactively be modified. *Cofer v. Cofer*, 205 Va. 834, 839 (1965); *Smith v. Smith*, 4 Va. App. 148, 152 (1987). Mr. Small, however, presented testimony that he had purchased a car for Mrs. Small to use, had previously furnished transportation for her, and had advanced other monies on her behalf. He contends that the parties had entered an agreement that these non-conforming payments would be advanced and received in lieu of the court-ordered *pendente lite* spousal support ordered in the First Suit.

Generally, agreements for the payment of non-conforming *child* support have been held by the Virginia courts to be unenforceable, except in limited circumstances. *Gallagher v. Gallagher*, 35 Va. App. 470 (2001); *Wilderman v. Wilderman*, 25 Va. App. 500 (1997). Neither side has presented this Court with cases demonstrating when, if ever, non-conforming *spousal* support agreements are enforceable. This Court, however, need not address that issue, because Mr. Small has failed to prove the agreement upon which this argument is based.

Although Mr. Small's evidence at the December 5 hearing shows that he did provide Mrs. Small with transportation, car insurance and related transportation, and sporadic other assistance, the evidence also demonstrates that this course of conduct had preceded the *pendente lite* hearing in the First Suit and continued after entry of the final decree of divorce in the Second Suit. Furthermore, while Mr.

Small generally testified that such an oral agreement had been reached, he did not testify to particular dealings between the parties when the putative agreement was reached; he did not testify as to the date on which the agreement was reached; he did not testify to a specific offer. Mrs. Small, on the other hand, unequivocally testified that no such agreement had been reached. In order to prove a contract, a party must prove an offer and acceptance of that offer, a meeting of the minds. *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995). Furthermore, the terms of the agreement must be proven with certainty. *Lanston Monotype Machine Co. v. Times-Dispatch Co.*, 115 Va. 797 (1914). Mr. Small's overly general evidence failed to satisfy these requirements of proof.

Because no non-conforming support agreement was proved,[3] Mr. Small's contention that the parties reached an agreement to supercede the terms of the *pendente lite* decree requiring him to make regular spousal support payments of $950 per month fails.

### Sanctions

On account of Mr. Small's violation of the *pendente lite* decree in the First Suit, he is ordered to pay arrearages of $950 per month from April 1, 1994, with interest, with credit for the amounts of checks made payable to Mrs. Small and introduced into evidence. See Ex. Pl. Ex. 6. Mr. Small is also ordered to pay attorney's fees and costs expended in connection with this rule to show cause. A separate hearing will be conducted with regard to the amount of fees and costs to be awarded unless counsel can agree upon the amount. Mrs. Small will not be awarded payment for her health care insurance procured or her unreimbursed medical expenses incurred, even though Mr. Small violated the *pendente lite* order by failing to procure such heath care insurance. In reaching this decision, I conclude first that Mr. Small was to be afforded a credit against future support payments for the health care premiums incurred to afford Mrs. Small that insurance.[4] Accordingly, that violation of

---

[3] In the course of the December 5, 2001, hearing, this Court raised the question of whether unjust enrichment principles would sanction Mrs. Small's acceptance of non-conforming spousal support as a basis for excusing Mr. Small's payments of spousal support as ordered. Mr. Small presented no Virginia authority for this application of unjust enrichment principles.

[4] Judge Kenny further ordered that Mr. Small "shall be given credit for the cost of such coverage in determining the amounts of support." Plainly, the amount of such coverage was not utilized by Judge Kenny in setting the spousal support of $950 per month awarded.

124

the Court's order is addressed by awarding Mrs. Small monthly spousal support of $950 per month.